**UNITED MILLS CO, Inc v TAX COMMISSION et, Etc**

Ohio Appeals, 9th Dist, Lorain Co

No 690.  Decided June 22, 1934

Eagleson & Laylin, Columbus, and Webber & Black, Elyria, for plaintiff in error. John W. Bricker, Attorney General, Columbus, Wm. J. Ford, Asst. Atty. Gen., Columbus, and Frank E. Stevens, Prosecuting Attorney, Elyria, for defendants in error.

## OPINION

By WASHBURN, PJ.

The tax assessed was upon the average amount of wheat and flour and other finished products which said company owned and had on hand in its mill at Grafton during the year 1931, and it is conceded that the validity of said taxation order depends upon the single question of whether the property so taxed, except a small quantity of by-products, which were subject to local sale, was in legal contemplation in transit in interstate commerce.

By the agreed statement of facts, we learn that the United Mills Co., which has a capital stock of $500, was organized and is entirely owned by the Loose-Wiles Biscuit Co., a New York Corporation, which is engaged in the manufacture and sale of baked food products, having bakeries in many states; that said Loose-Wiles Co. uses in its business a special kind of flour and wheat products; that to obtain the same economically it acquired and operated said mill at Grafton in the name of said United Mills Co.; that, with the exception of certain by-products, the same being in tonnage about one-fifth of the product of said United Mills Co., the entire product of said mill was used by said parent company in its business; that all of the product used by the parent company was interstate business; and that, in 1931, 19.12% of the whole tonnage shipped from the Grafton mill was in intrastate shipments.

In the statement of facts it is agreed that:

"10. The following is the manner in which the operations of the United Mills Company, Inc., as a subsidiary of the Loose-Wiles Biscuit Company, are conducted, were conducted throughout the year 1931, and were being conducted on January 1, 1932.

"The secretary of the Loose-Wiles Biscuit Company and the president of the United Mills Company, Inc., constitute a committee of the Loose-Wiles Biscuit Company, whose duty it is to formulate policies respecting the purchase of wheat, and submit the same to the president and directors of the Loose-Wiles Biscuit Company. The policy which has prevailed for some years, being the policy thus adopted by the Loose-Wiles Biscuit Company, is that wheat is purchased only in anticipation of the known needs of the bakeries served by United Mills Company, Inc.; that is to say, each Loose-Wiles Bakery so related to United Mills Company, Inc., makes a report weekly to Mr. Irvin, the president of the United Mills Company, Inc., showing the amount of flour of different types and other like materials on hand at the bakery, the amount of the various types used by the bakery during the preceding period or periods, and the amounts of flour known to be in transit. Such reports also show the scale on which each bakery is operating at the time with reference to running time, etc., and are supplemented as occasion requires by telegraphic reports of unexpected requirements.

"From the reports thus made, and his own records, showing grain already purchased, grain in transit, grain at the mill at Grafton, and other like relevant information in his possession, Mr. Irvin determines the amount of grain to be purchased at any particular time, and the elevator

or elevators from which it will be purchased. Offers are made by him in the name of the United Mills Company, Inc., and if accepted the seller is instructed to ship the quantity purchased at a specified time through specified carriers to Grafton, Ohio. The prices offered are based upon the Chicago quotations (with a differential) with an allowance for freight figured on the through rate (hereinafter to be discussed) from the point. of origination of the shipment to the eastern termini. (This is in case the wheat is purchased west of Ohio with a view to be shipped as flour to an eastern terminus. As to wheat purchased in Ohio, and sent to Grafton, with a view to getting it as flour to Saginaw, Michigan, or Chicago, Illinois, the reverse is true).

"11. The working capital necessary for the purchase of such wheat is furnished by the Loose-Wiles Biscuit Company. That is to say, the Loose-Wiles Biscuit Company actually pays all the money that is paid out for wheat. As a matter of bookkeeping, these payments appear as loans without interest to United Mills Company, Inc. When the wheat thus purchased reaches Grafton, it is taken from the cars and milled. It is then shipped out to the bakeries as per their previously established respective requirements. United Mills Company, Inc., as a matter of bookkeeping, is credited against the loans made for the purchase of the wheat, with a price based upon the actual costs incurred at Grafton by the United Mills Company, and a share of the general overhead of the Loose-Wiles Biscuit Company, including interest on the investment at Grafton, which was in the first instance a Loose-Wiles investment."

The wheat purchased for the Grafton mill is shipped under a privilege of milling in transit granted by the Interstate Commerce Commission, which, for the purpose of freight rate, treats the shipment as in transit from the point of origin to the ultimate terminal point of the product produced by the processing of the wheat at the Grafton mill, which processing is completed in about 17 days after the wheat arrives at the Grafton mill.

There were no facilities at Grafton for the storage or accumulation of wheat or the products of its processing, other than those necessarily incidental to the milling process.

A price for such processing was made, based upon the actual cost of milling, interest on investment, etc., and such price was credited upon the loans made by the parent company for the purchase of the wheat.

For the purpose of disposing of the case, we assume that the United Mills Co. was the legal owner of the wheat processed in its mill, but that it was obligated to deliver to the parent company its entire output of flour and such part of the by-products of the milling of the wheat as was usable by the parent company.

In the brief of plaintiff in error, the legal question to be decided is stated as follows:

"The court will observe that the assessment is attacked as illegal and void because the state government as a whole, including the executive or administrative branch, is asserted to be without power to tax the property in question because of the implied limitations imposed upon state action by the commerce clause of the Federal constitution and the due process clause thereof. There is no claim that the taxing statutes of the state on their face do not reach the property in question."

It is conceded that the problem is not solved by the fact that, for rate purposes, the wheat, while in the Grafton mill, was considered by the Interstate Commerce Commission as in transit across the state of Ohio.

It seems to be settled that, where property moving in interstate commerce is taken from the possession of the carrier by the owner and held within a state because of some necessity or convenience of transportation, it is not subject to taxation in such state if further transportation is necessarily contemplated as a matter of obligation; but that, if such property is taken and held by the owner for his own purposes or convenience, disassociated from interstate commerce as such, it is taxable in such state even though it is the intention of the owner that said property will again move in interstate commerce; and we are of the opinion that, where there has been an interruption in the interstate movement of property and the same has come to rest solely for some purpose related to the more expeditious further movement of the property in interstate commerce, the owner of the same may, by mechanical or other physical operations, put the property in more convenient form for further transportation without taking it out of interstate commerce; but if the property has so come to rest for the primary purpose of changing its form by mechanical or other physical operations for the financial benefit of the owner, and to facilitate

the business in which he is engaged, such property is thereby taken out of interstate commerce, although such mechanical or other physical change of the property may incidentally and to some extent serve to benefit the owner in the matter of transportation, and although the owner is obligated to make such changes and in furtherance of his business to continue the movement of the property, as changed, in interstate commerce.

It seems to us unsound to hold that, because the United Mills Co. obligated itself to purchase wheat in Chicago, bring it to Grafton, process it, and sell and ship the products of such processing to New York parties, it thereby made its processing business a mere incident of interstate commerce; it seems to us rather that the transportation was a mere incident of its processing business; otherwise, by the form of contract made, it could render thousands of dollars worth of property untaxable in the state where its business was conducted.

If it be the law that the United Mills Co. may take its wheat from the possession of the carrier, and, by a manufacturing process reduce the wheat to its component parts and completely destroy its identity as wheat and not thereby take the wheat out of interstate commerce, because it was bound by contract to do what it did, why may not a manufacturing company in Ohio, in pursuance of a contract duly made, purchase in Minnesota all of the raw materials necessary in the manufacture of steel rails, ship the same to the Ohio plant and there convert such raw materials into steel rails and ship same to New York, and then claim that, it being obligated by contract to do what it did, such manufacturing process was but an incident of interstate commerce?

It is no answer to such query to say that the Interstate Commerce Commission would not be likely to consider, for rate-making purposes, that such raw materials, while in said manufacturing plant, were in transit across the state of Ohio.

It is true that in many cases the courts have said that the contract in pursuance of which the shipment is made and the method of complying with it, is a circumstance of much importance in determining whether, under a given state of facts, the property is taken out of interstate commerce; but I know of no case where such contract obligation has been considered as a controlling circumstance, where the delay in the continuity of movement was not merely incidental to the journey and the change made in the property was not for a purpose directly related to the expeditious further movement of the property in interstate commerce.

In the case at bar, it seems to us that the interruption at Grafton in the shipments of wheat, and the processing of the same, were not by reason of some exigency or other reason or purpose relating to or affecting the further transportation of the wheat, but were for a purpose relating to the profit or convenience of the owner of the wheat; and the fact that the United Mills Co. was under contract obligation to so interrupt said shipments and process said wheat, is not of controlling importance and does not affect the conclusion which, but for such contract, we are required by the authorities to reach; which is, that the wheat taxed was not, in legal contemplation, in transit in interstate commerce and that the same therefore taxable in the state of Ohio.

In reaching this conclusion, we have assumed that the contract of the United Mills Co. with the parent company was such a contract as created an obligation proper to be considered and given full force and effect in determining the legal question we have discussed; but considering the parties to the contract, the circumstances under which it was made, and the manner of its performance, there may be a question as to whether it is entitled to be given the weight which would attach to a like contract between two corporations each acting independently and free from domination or control by the other.

Judgment affirmed.

FUNK and STEVENS, JJ, concur in judgment.